OPINION
This is an original action in mandamus filed by relator, Dorsie Stacy, a former employee of the Batavia Local School District Board of Education ("Board"), against respondents, the Board; Tim Young, president of the Board; Paul Varney, superintendent of the Batavia Local School District; and Terry Stephens, treasurer of the school district.
Relator was employed by the Board as a school bus mechanic for approximately fourteen and one-half years, retiring effective August 21, 1998. Relator is seeking reinstatement to his job as a mechanic and back pay as the result of job abolishments and lay-offs which occurred at or near the time of his retirement. The job abolishments and lay-offs were subsequently found to violate a collective bargaining agreement and the Board employees affected were ordered to be reinstated with back pay and benefits. See State ex rel. Ohio Assn. of Pub. School Emp./AFSCME, Local4, AFL-CIO v. Batavia Local School Dist. Bd. of Edn. (2000),89 Ohio St.3d 191.
At the conclusion of the 1997-1998 school year, the Board employed thirteen school bus drivers and one school bus mechanic (Relator). At that time, Relator was working for the Board pursuant to a statutory employment contract for continuing employment. Relator and the bus drivers were members of a bargaining unit represented by the Ohio Association of Public School Employees/AFSCME, Local 4, AFL-CIO ("Union").
On June 22, 1998, the Board executed an Agreement relating to student transportation with Laidlaw Transit, Inc. Pursuant to the Agreement, Laidlaw would provide all of the Board's student transportation needs for a period of five years. On July 20, 1998 the Board, acting pursuant to the provisions of the collective bargaining agreement between the Union and the Board, abolished the bus driver and mechanic positions and laid off all employees in those positions effective August 21, 1998.
Pursuant to the terms of the Agreement with Laidlaw, all of the employees laid off by the Board were to be offered employment with Laidlaw. Also according to the Agreement, all of the laid off employees, including Relator, who accepted employment with Laidlaw would be able to receive their existing severance benefits upon retirement. Laidlaw extended an offer of employment to Relator on June 24, 1998. Pursuant to the offer of employment, Relator would receive a three percent pay increase in his current hourly pay rate, continued State Employee Retirement System ("SERS") participation, and other stated benefits. Relator was required to accept Laidlaw's offer of employment on or before July 13, 1998. Relator did not accept the offer of employment and retired effective August 21, 1998.
Prior to the June 22, 1998 Agreement between the Board and Laidlaw, Relator's union had advised the Board that it would take legal action on behalf of the bargaining unit employees if the Board proceeded to contract out transportation work. After the Agreement was signed, the union did take legal action. See State ex rel. Ohio Assn. of Pub. SchoolEmp./AFSCME, Local 4, AFL-CIO v. Batavia Local School Dist. Bd. of Edn. (2000), 89 Ohio St.3d 191; State ex rel. Assn. of Pub. SchoolEmp./AFSCME, Local 4, AFL-CIO v. Batavia Local School Dist. Bd. of Edn. (May 10, 1999), Clermont App. No. CA98-08-068, unreported. Relator did not participate in either of these actions.
Prior to and during the events surrounding the Laidlaw Agreement, Relator was considering retirement. In spring 1998, Relator attended an SERS meeting at a local high school. Relator also apparently visited the SERS office in Columbus on August 3, 1998. Relator requested and received an estimate of the benefits he would be entitled to from SERS based upon a retirement date of April 1, 1999.
After the Supreme Court decided the AFSCME v. Batavia Local SchoolDist. case, Relator attempted to return to his mechanic's position with the Board. Relator asked a Board member for his job back. Relator also applied for his vacant mechanic's position as a new hire on January 18, 2000. Relator was not offered the position. Relator filed this complaint for mandamus on October 10, 2000 seeking an order from this court directing Repondents to (1) reinstate him to his mechanic's position, (2) pay him all back pay and lost benefits from the time he was wrongfully excluded from employment, and (3) pay him his costs and attorney fees.
The critical issue to be decided here is whether Relator's decision to retire was voluntary, or if he was forced to retire as the result of the Board's decision to outsource its transportation needs, a decision which the Ohio Supreme Court ultimately found to be contrary to the terms of an applicable collective bargaining agreement.
Clearly, Relator retired during a period when the Board was in the process of outsourcing its transportation needs, and he was aware at the time he retired that if he wished to continue working in his present position, he would have to work for Laidlaw, not the Board. However, aside from Relator's deposition testimony, given on April 4, 2001, more than two and one-half years after his retirement and almost ten months after the Ohio Supreme Court decided AFSCME v. Batavia Local SchoolDist., there is no evidence in the record which indicates that Relator's decision to retire was anything other than voluntary. Voluntary retirement has been held to be a waiver with respect to the right to seek reinstatement and back pay. State ex rel. Stackhouse v. Becker, Mayor
(Dec. 16, 1994), Lake App. No. 94-L-024; Phillips v. West Holmes LocalSchool Dist. Bd. of Edn. (Mar. 20, 1990), Holmes App. No. CA.407, unreported.
In Stackhouse, the appellant submitted a letter of resignation to the Mayor of the City of Eastlake. Although the letter did not mention it, the appellant had applied for disability retirement. Although his disability retirement application was initially granted, it was revoked fifteen months later and the appellant was found capable of returning to work. The appellant then filed a mandamus petition seeking to be restored to his former position and salary. He argued that, because he had taken disability retirement, the city should have considered him to be on a leave of absence. The Eleventh District Court of Appeals disagreed, finding that the appellant had retired and that there was no right to reinstatement.
In Phillips, the Relator opted to participate in an early incentive retirement plan offered by the West Holmes Local School District Board of Education. The West Holmes Local School Board had earlier declined to renew the Relator's contract. Although the Board's decision not to renew the contract was found to be improper due to a failure to comply with R.C. 3319.02, the Fifth District Court of Appeals found that the Relator waived his right to reassignment or back pay due to his voluntary retirement.
In this case, Relator retired and received payment for the accrued vacation time, sick time and other benefits to which he was entitled. He did not join in the action filed by the union to seek reinstatement to his former position with the Board, although he could have done so. There is nothing in the record to indicate that Relator's retirement was not voluntary at the time it occurred. In fact, Relator's deposition indicates that he did not even discuss transportation subcontracting with any member or administrative employee of the Board at any time during 1998, 1999, or the first six months of 2000.
Moreover, Relator's position that he was forced to retire is undermined by the fact that he was offered and refused a substantially similar position with Laidlaw prior to his retirement which protected his severance rights and included a three percent raise and similar benefits. Although Relator argues that the position offered by Laidlaw was not substantially similar to his former position, his argument is unconvincing.
The reasons behind requiring a person who has been laid off or otherwise denied an employment opportunity to take available "substantially similar" employment can be found in the common law duty to minimize damages. Ford Motor Company v. Equal Employment OpportunityCommission (1982), 458 U.S. 219, 102 S.Ct. 3057. An unemployed or underemployed claimant need not go into another line of work, accept a demotion or take a demeaning position, but must mitigate damages by taking a substantially equivalent position. Ford Motor Company,458 U.S. at 231-32, 102 S.Ct. at 3065-66. The general inquiry is whether one who has lost his or her job could have, in the exercise of reasonable diligence, minimized damages by accepting a similar position. Id.; EqualEmployment Opportunity Commission v. Exxon Shipping Co. (C.A.5, 1984),745 F.2d 967, 978.
In this case, Relator was offered a nearly identical position with Laidlaw with a three percent salary increase.[1] The job offered by Laidlaw had similar benefits. Although Relator claims that the job offered by Laidlaw included "computer work" which was not required of him while he was employed by the Board, it appears that the only difference was that Laidlaw would require Relator to keep maintenance records on a computer instead of by hand on paper. Other than that, the record indicates that Relator was informed that he would be working on buses that were going to service the Batavia School District Transportation System, which was the identical job he had been performing prior to retirement. It cannot be convincingly argued that he was not offered comparable, substantially similar employment.
Relator's contention that he was forced to retire in order to receive severance pay is also without merit. The contract between the Board and Laidlaw provides in pertinent part as follows:
 Existing Transportation Employees who accept employment with Company [Laidlaw] pursuant to the terms of this Agreement may have accrued and unused sick leave benefits. * * * If the Existing Transportation Employee accepts employment with Company, per the terms of this Agreement, and that Existing Transportation Employee subsequently retires from Company and enters the State Employment Retirement System, the Board agrees to provide the Existing Transportation Employee any such severance pay as he/she would have been entitled to receive had he/she retired from employment with theBoard. This provision does not apply if the existing Transportation Employee does not accept employment with the Company pursuant to the terms of this Agreement.
Clearly, Relator had to retire from working for the Board to receive his severance pay immediately, but he also had the option of working for Laidlaw and retaining his right to severance pay. We fail to see how this choice "forced" Relator to retire in order to receive severance pay.
To be entitled to a writ of mandamus, Relator must show (1) a clear legal right to the relief he requests, (2) a clear legal duty on the part of respondents to provide the requested relief, and (3) no adequate remedy in the ordinary course of law. State ex rel. Pressley v.Industrial Commission (1967), 11 Ohio St.2d 141.
Based upon all of the foregoing, we conclude that Relator voluntarily retired from his school bus mechanic position, and he therefore has no right to reinstatement as the result of the action filed by the union. Although the union's action resulted in a determination that the layoffs implemented by the Board were improper, Relator retired prior to being laid off, did not participate in the action brought by the union, and refused to accept an offer of similar employment from Laidlaw. Although Relator states in his deposition that he intended to work "probably another three or four years," his actions belie this assertion. The record indicates that Relator voluntarily retired and, until after the time that the Supreme Court found that he could have been reinstated to his prior position, gave no indication that he wished to continue working or that he had been forced to retire as a result of the Agreement between the Board and Laidlaw. The petition for writ of mandamus is therefore denied. Costs shall be paid by Relator.
POWELL and YOUNG, JJ., concur.
[1] Relator contends that he was not really offered a three percent salary increase, but really a three percent salary decrease because he had received a six percent increase in salary immediately prior to Laidlaw's offer of employment. However, the record reveals that Laidlaw's offer was "[c]urrent hourly rate plus a 3% pay increase." Arguably, Relator may have been entitled to an additional three percent increase. In any case, there is no indication that Relator pursued this matter with Laidlaw prior to deciding to retire.