OPINION
{¶ 1} This is an appeal from a Summary Judgment granted to appellees pursuant to a complaint in mandamus.
{¶ 2} Under Civ.R. 56 a Summary Judgment can be granted only if there are no material facts in dispute. In the case sub judice the material facts fall into this category and the issues for the trial court were an interpretation of the terms of the collective bargaining agreement with the application of an Alliance City Ordinance, State statutes and case law.
{¶ 3} This case began with the resignation of Darryl Wayt as Fire Inspector I.
{¶ 4} Appellee, Eugene Devies held a Fire Inspector II position.
{¶ 5} Because of claimed financial and other considerations, the city of Alliance, acting through appellants, chose to leave the Fire Inspector I position vacant.
{¶ 6} There is no dispute as to the qualifications of appellee Devies as to filling the vacant position.
{¶ 7} The city would have permitted him to fill such vacancy if an agreement could have been reached to leave the Class II position vacant if he were promoted. Since such agreement was not reached, the attempt is not essential to a determination of the issues herein as the issues are questions of law and interpretation of the Collective Bargaining Agreement.
 ASSIGNMENTS OF ERROR {¶ 8} "THE TRIAL COURT ERRED IN DETERMINING SUB SILENCIO THAT A GRIEVANCE WAS NOT THE SOLE REMEDY FOR CONTRACTUAL DISPUTES."
 {¶ 9} "THE TRIAL COURT ERRED IN FINDING THAT THE FIRE PREVENTION BUREAU POSITIONS WERE MANDATORY UNDER THE COLLECTIVE BARGAINING AGREEMENT."
 {¶ 10} "THE TRIAL COURT ERRED IN RULING SUB SILENCIO THAT THE COLLECTIVE BARGAINING AGREEMENT ENTERED INTO PURSUANT TO R.C. § 4117 DID NOT PREVAIL OVER CONFLICTING CIVIL SERVICE LAW."
 I, II, III
{¶ 11} Each of the three Assignments of Error revolve around the following:
 {¶ 12} Alliance City Amended Ordinance 50-85 (III) in part states:
I. PURPOSE:
 (A) To create a Fire Prevention Division within the Alliance City Fire Dept.
II. REASON:
 (A) In order to maintain effeciency [SIC] and continuity within the Fire Dept. as afore agreed upon by both the City and Local #480 in previous negotiations. (Purpose — Page 3, Section 1).
III. ESTABLISHMENT OF POSITIONS:
 (A) The establishment of a Fire Prevention Division consisting of the following positions.
1. One (1) Fire Fighter (Prevention).
2. One (1) Prevention Officer, Class II.
3. One (1) Prevention Officer, Class I.
 (B) The established Prevention Division shall consist of the following steps within that Division.
 1. Fire Fighter (Prevention) — THE FIRST STEP Must have served 24 months in grade of Fire Fighter to be eligible. The Chief shall have the right to fill this position from those eligible.
 2. Prevention Officer, Class II — THE SECOND STEP — This position must be filled by a competative [SIC] Civil Service examination.
 3. Prevention Officer, Class I — THE THIRD STEP — If deemed necessary, it shall be filled by a competative [SIC] Civil Service examination.
{¶ 13} Revised Code § 4117.10(A) provides:
 "An agreement between a public employer and an exclusive representative entered into pursuant to this chapter governs the wages, hours, and terms and conditions of public employment covered by the agreement. If the agreement provides for a final and binding arbitration of grievances, public employers, employees, and employer organizations are subject solely to that grievance procedure and the state personnel board of review or civil service commissions have no jurisdiction to receive and determine any appeals relating to matters that were the subject of a final and binding grievance procedure."
{¶ 14} Article 5A of the Collective Bargaining Agreement as to retained "Management Rights" are:
 ARTICLE 5. A. MANAGEMENT RIGHTS
Section 1. Description
 (A) The Union recognizes that, except as otherwise limited by this agreement, it is the exclusive function of Management to maintain order, discipline, efficiency and to operate the City and perform all functions attendant thereto, including but not limited to, the right to hire, direct, classify, assign, transfer, evaluate, promote, demote, layoff and suspend and/or discipline and/or discharge employees for just cause; to schedule employees, to determine the classification, size and duties of the work force, to determine work methods, standards, material and equipment; to assign and allocate work within and between stations; to discontinue, reorganize and to otherwise carry out the customary functions of Management. Management rights will be exercised compliant to all sub-sections of Section 4117.08 of the Ohio Revised Code.
{¶ 15} Revised Code § 4117.08 (A) states:
 (A) All matters pertaining to wages, hours, or terms and other conditions of employment and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement are subject to collective bargaining between the public employer and the exclusive representative, except as otherwise specified in this section.
{¶ 16} Subsection (C), (C) (1), (5) and (6) are as follows:
 (C) Unless a public employer agrees otherwise in a collective bargaining agreement, nothing in Chapter 4117. of the Revised Code impairs the right and responsibility of each public employer to:
 (1) Determine matters of inherent managerial policy which include, but are not limited to areas of discretion or policy such as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, and organizational structure;
* * *
 (5) Suspend, discipline, demote, or discharge for just cause, or lay off, transfer, assign, schedule, promote, or retain employees;
(6) Determine the adequacy of the work force;
* * *
{¶ 17} Article 7A, Sec. 1(A), Sec. 2 states in part:
 ARTICLE 7. A GRIEVANCE AND ARBITRATION PROCEDURE
Section 1. Purpose
 (A) The purpose of this grievance procedure shall be to secure an equitable and expeditious resolution of grievances. The Union and City encourage the informal resolution of disputes through discussion between the bargaining unit members and supervision.
Section 2. Definitions
 GRIEVANCE: A grievance refers to any dispute, disagreement, controversy, or circumstance regarded as just cause for protest. A grievance may be the result of misrepresentation of this agreement, the application of the agreement, or the interpretation of this agreement. Furthermore, a grievance may arise from the established working conditions within the Fire Department.
{¶ 18} Article 7, Sec. 7(A), (B) and (C) recites:
Section 7. Jurisdiction
 The jurisdiction of the arbitrator selected by both parties shall be limited to the following:
 (A) An adjudication of the issues which are formulated under the terms of this agreement or under any submission agreement which is entered into by the parties,
 (B) The interpretation of the specific terms of this agreement which apply to the issues presented to the arbitrator. The arbitrator shall not have the authority to supplement or modify this agreement by reference to any claimed practices or customs in any other fire department.
 (C) The rendition of a decision or award which in no way modifies, adds to, subtracts from, or changes or amends any term or condition of this agreement or conflicts with the provision of this agreement; and . . .
{¶ 19} Section 8 (A) of the Collective Bargaining Agreement provides for binding arbitration subject to judicial review as follows:
 (A) No one arbitrator shall have more than one (1) grievance submitted to and under consideration by him/her at any one time unless the parties hereto otherwise agree in writing. A grievance shall be deemed under consideration by the arbitrator until the arbitrator has rendered a decision and an award in writing. Furthermore, the decision of the arbitrator within the limits herein described shall be final and binding upon the City, the Union, and the employees affected, subject to judicial review.
{¶ 20} Article 11(B), Sec. 12 states:
Section 12. Division Assignment
 (A) The Chief of the Department shall make assignments to the Division of Fire Prevention as he deems necessary.
{¶ 21} Article 11(C) provides:
 ARTICLE 11. C. PREVENTION DIVISION (FIRE)
Section 1. Establishment of Positions
 (A) The establishment of a Fire Prevention Division consisting of the following positions:
(1) One (1) First Grade Fire Fighter (Prevention)
(2) One (1) Prevention Officer, Class II
(3) One (1) Prevention Officer Class I
 (B) The established Prevention Division shall consist of the following steps within that Division.
(1) FIRST STEP: First Grade Fire Fighter (Prevention)
 (a) Must be presently serving in the suppression force. (b) Must have served twenty four (24) months grade as a First Grade Fire Fighter.
 (c) The Chief shall have the right to fill this position from those eligible.
(2) SECOND STEP: Prevention Officer, Class II
 (a) This position must be filled by a competitive Civil Service Examination.
(3) THIRD STEP: Prevention Officer, Class I
 (a) If deemed necessary, it shall be filled by a competitive Civil Service Examination.
{¶ 22} We are guided by the Ohio Supreme Court's decision in Stateof Ohio ex rel. Ohio Association of Public School Employees/AFSCME Local4, AFL-CIO v. Batavia Local School Board of Education (2000)89 Ohio St.3d 191.
{¶ 23} Such case involved a decision by the School Board to layoff thirteen school bus drivers, abolish their positions and out source these driving duties. The position taken by the Board proceeded through the grievance procedure of the collective bargaining agreement, and after the denial of the representative Union's position a mandamus, such as in the case sub judice was requested.
{¶ 24} The Supreme Court found that the action of the Board was in conflict with R.C. § 3319.081(B) and (C) which provided statutory protection to non-teaching employees as to salary, demotion, suspension and termination.
{¶ 25} It should also be noted that subsection (D) stated:
 (D) All employees who have been employed by a school district where the provisions of Chapter 124. of the Revised Code do not apply, for a period of at least three years on November 24, 1967, shall hold continuing contracts of employment pursuant to this section.
{¶ 26} Subsection (C) provided the only exceptions which authorized termination.
{¶ 27} Revised Code § 3319.081 is not applicable to the case sub judice.
{¶ 28} The court held that a collective bargaining agreement which is in conflict with statutory rights must explicitly demonstrate the parties intention to preempt such rights.
{¶ 29} In its decision the Court referenced Naylor v. CardinalLocal School District Board of Education (1994), 69 Ohio St.3d 162 andState ex rel. Clark v. Greater Cleveland Regional Transit Auth. (1990),48 Ohio St.3d 19 and specifically noted that in the Clark decision no clear conflict existed between the collective bargaining agreement and the rights under State statutes.
{¶ 30} We shall address each of the Assignments of Error simultaneously.
{¶ 31} In this case we find no clear conflict between State statutes or the Alliance City Ordinance and the Collective Bargaining Agreement. In addition, we find no statute or ordinance (such as R.C. § 3319.081) which guarantees the filling of a vacant position when a Collective Bargaining Agreement exists. Therefore, the contract language must be interpreted on this issue.
{¶ 32} Despite the statements contained in the affidavit of Mayor Middleton in support of the City's Summary Judgment Motion (Paragraph 8) and that of Fire Chief John Weaver (paragraph 4) as to the City's financial position, we have nothing in the record establishing that such monetary problems or lack of work warranted the non-filling of the Class I position other than these affidavits.
{¶ 33} If a financial shortfall warrants such action, then R.C. § 124.321 may become relevant.
{¶ 34} Revised Code § 124.321 states in part:
 124.321 LAYOFF PROCEDURES; LACK OF FUNDS FOR WORK; LACK OF WORK; ABOLISHMENT OF POSITIONS
 (A) Whenever it becomes necessary for an appointing authority to reduce its work force the appointing authority shall lay off employees or abolish their positions in accordance with sections 124.321 to 124.327
of the Revised Code and the rules of the director of administrative services.
 (B) Employees may be laid off as a result of a lack of funds within an appointing authority.
* * *
 A lack of funds means an appointing authority has a current or projected deficiency of funding to maintain current, or to sustain projected, levels of staffing and operations.
* * *
 (C) Employees may be laid off as a result of lack of work within an appointing authority.
* * *
 (D) Employees may be laid off as a result of abolishment of positions. Abolishment means the permanent deletion of a position or positions from the organization or structure of an appointing authority due to lack of continued need for the position. An appointing authority may abolish positions as a result of a reorganization for the efficient operation of the appointing authority, for reasons of economy, or for lack of work. The determination of the need to abolish positions shall indicate the lack of continued need for positions within an appointing authority. Appointing authorities shall themselves determine whether any position should be abolished and shall file a statement of rationale and supporting documentation with the director of administrative services prior to sending the notice of abolishment. If an abolishment results in a reduction of the work force, the appointing authority shall follow the procedures for laying off employees, subject to the following modifications:
* * *
{¶ 35} Nothing in the record indicates compliance with R.C. § 124.321.
{¶ 36} Also, we do not know if the non-filling of the Class I position is temporary or a permanent abolishment. The financial situation implies a temporary situation. The alleged lack of work may indicate contemplated permanency.
{¶ 37} The primary problem which needs to be addressed is one of jurisdiction of the trial court. The Collective Bargaining Agreement specifically provides in Article 7 a grievance procedure.
{¶ 38} The issue between the City and the appellees and the union representation is whether under the Agreement the City is mandated to fill the vacated position. Essentially, it is a contract interpretation.
{¶ 39} Appellee has cited Zavisin v. City of Loveland (1989),44 Ohio St.3d 158 in support of a mandatory duty to fill a vacancy. While we agree that the Court so concluded under the provisions of R.C. § 124.37 and 124.44, such is inapplicable here. The city of Loveland was a Charter City acting under the Civil Service statutes.
{¶ 40} Here, a Collective Bargaining Agreement exists which, under R.C. § 4117.10, would prevail over such sections as it specifically states that such agreement is controlling and such statute prevails over conflicting statutes. We are then returned to an interpretation of the Collective Bargaining Agreement.
{¶ 41} The ordinance creating the position is not being violated as the position is not on the surface being abolished. However, as stated previously, the record is deficient as to lack of resources or insufficiency of applicable work related to the position.
{¶ 42} Section 7 (B) specifically provides that the Arbitrator shall have the authority (jurisdiction) to interpret the contract.
{¶ 43} No grievance procedure was taken prior to initiating the mandamus action.
{¶ 44} Appellee relies on an unspecified line of cases (page 9 of Brief) to the effect that a court can issue a mandamus notwithstanding the existence of a grievance procedure. These are also inapplicable as not only does Sec. 8 (A) of the Collective Bargaining Agreement provide for subsequent judicial review but such would exist for a violation of applicable statutes in an arbitrator's decision or for other reasons indicating abuse of discretion. The presence of the arbitration provisions do not abrogate the ultimate reviewing authority of the courts but stand in the way of premature action prior to the exhaustion of available remedies. Decrane v. Westlake (1995), 103 Ohio App.3d 481.
{¶ 45} We are not required to agree or disagree with the decisions cited by appellee of In Re: Civil Service Charges Against Piper (2001),142 Ohio App.3d 765, In Re: Lemley-Wingo (Aug. 22, 1990), Ross App. No. 1622, unreported and Monico v. Girard Board of Education (Dec. 4, 1987), 11th Dist. No. 3716, unreported as no attempt in the case sub judice was made or could have been made to proceed through the Civil Service Commission.
{¶ 46} The trial court specifically stated:
 "The court herein disagrees with the city's interpretation of the Collective Bargaining Agreement." (Page 2 of the Opinion).
{¶ 47} We determine that the grievance procedure is a necessary process which must be completed prior to seeking redress through court action.
{¶ 48} Therefore, the trial court lacked jurisdiction to interpret the Collective Bargaining Agreement prior to completion of this necessary predicate of the arbitration process.
{¶ 49} We therefore sustain each of the Assignments of Error, and vacate the Judgment of the Common Pleas Court due to lack of jurisdiction. We are not required to determine which interpretation of the Agreement as to filling vacancies is contractually correct as the contract delegates this responsibility to a chosen arbitrator subject to subsequent judicial review, if requested.
By: BOGGINS, J. HOFFMAN, P.J. and GWIN, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the decision of the Stark County Common Pleas Court is Reversed. Costs assessed to appellees.