**[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 191.]**

THE STATE EX REL. OHIO ASSOCIATION OF PUBLIC SCHOOL
EMPLOYEES/AFSCME, LOCAL 4, AFL-CIO, ET AL., APPELLANTS, *v.* BATAVIA
LOCAL SCHOOL DISTRICT BOARD OF EDUCATION ET AL., APPELLEES.

**[Cite as *State ex rel. Ohio Assn. of Pub. School Emp./AFSCME, Local 4, AFL-CIO v. Batavia Local School Dist. Bd. of Edn.*, 2000-Ohio-130.]**

*Public employment—In order to negate statutory rights of public employees, a collective bargaining agreement must use language with such specificity as to explicitly demonstrate that the intent of the parties was to preempt statutory rights.*

In order to negate statutory rights of public employees, a collective bargaining agreement must use language with such specificity as to explicitly demonstrate that the intent of the parties was to preempt statutory rights.

(No. 99-963 — Submitted February 22, 2000 — Decided June 21, 2000.)

APPEAL from the Court of Appeals for Clermont County, No. CA98-08-068.

_____

**{¶ 1}** Appellants in this matter are the Ohio Association of Public School Employees/AFSCME, Local 4, AFL-CIO ("OAPSE"), OAPSE Local 738 ("Local 738"), and certain nonteaching public school employees of the Batavia Local School District. Appellees are the Batavia Local School District Board of Education ("Board"), James Fite, Superintendent, Terry W. Stephens, Treasurer, and Candace Koch, President.

**{¶ 2}** OAPSE and its Local 738 are the deemed-certified exclusive bargaining representative[1] for most of the nonteaching personnel employed by the

_____

[1] 1. Section 4(A) of Am.Sub.S.B. No. 133, effective October 6, 1983, provides:

"Exclusive recognition through a written contract, agreement, or memorandum of understanding by a public employer to an employee organization whether specifically stated or through tradition, custom, practice, election, or negotiation [that] the employees organization has

Board. As such, Local 738 and the Board entered into a series of collective bargaining agreements covering a bargaining unit that included bus drivers, cooks, custodians, mechanics, aides, and maintenance employees.

{¶ 3} The collective bargaining agreement in effect when this action was initiated was entered into by Local 738 and the Board on February 12, 1996. Its term ran from March 1, 1996 to February 28, 1999. Article 11 of the collective bargaining agreement set forth the management rights of the Board. Article 11 authorized the Board to "[d]etermine matters of inherent managerial policy," "[m]aintain and improve the efficiency and effectiveness of governmental operations," "[d]etermine the overall methods * * * or personnel by which governmental operations are to be conducted," "[d]etermine the adequacy of the work force," and "[e]ffectively manage the work force." Article 11 of the collective bargaining agreement also gave the Board the ability to "[s]uspend, discipline, demote, discharge for just cause, lay off, non-renew, transfer, assign, schedule, promote, or retain employees."

{¶ 4} Article 13 of the collective bargaining agreement set forth the procedures for layoffs and recalls. Article 13 provided:

"When layoff becomes necessary in a job classification due to the abolishment of positions, lack of funds or lack of work, the following procedures shall govern such layoff:

" * * *

"D. The Board shall determine in which classifications the layoff shall occur and the number of employees to be laid off."

---

been the only employee organization representing all employees in the unit is protected subject to the time restriction in division (B) of section 4117.05 of the Revised Code. Notwithstanding any other provision of this act, an employee organization recognized as the exclusive representative shall be deemed certified until challenged by another employee organization under the provisions of this act and the State Employment Relations Board has certified an exclusive representative." 140 Ohio Laws, Part I, 336, 367.

**{¶ 5}** The terms "abolishment" and "layoff" were not defined by the collective bargaining agreement.

**{¶ 6}** Following the conclusion of the 1997-1998 academic school year, the Board employed thirteen school bus drivers and one school bus mechanic. Pursuant to R.C. 3319.081, these employees had continuing or limited contracts of employment. The employment contract system set forth in R.C. 3319.081 provides nonteaching school district employees with certain protections and rights regarding salary, demotion, suspension, and termination. R.C. 3319.081(B) and (C).

**{¶ 7}** In June 1998, the Board considered entering into a contract with a private company, Laidlaw Transit, Inc. ("Laidlaw"), to provide bus transportation for the Batavia Local School District. The Board adopted a resolution directing Superintendent Fite and the Board's legal counsel to negotiate a contract with Laidlaw. On June 22, 1998, the Board executed a contract with Laidlaw whereby Laidlaw would furnish all student transportation services for the Batavia School District.

**{¶ 8}** As a result of the contract with Laidlaw, on July 20, 1998, the Board passed a resolution to abolish the positions of bus driver and mechanic and to lay off the fourteen employees who held those positions. Thereafter, pursuant to Article 13 of the collective bargaining agreement, the Board notified the bus drivers and mechanic that they were being laid off due to the abolishment of their positions. The laid-off employees subsequently accepted employment with Laidlaw to perform transportation services for the school district.

**{¶ 9}** After the Board's resolution to abolish the positions of bus driver and mechanic, some of the affected employees filed a grievance in accordance with Article 8 of the collective bargaining agreement. The grievance alleged that the Board had violated the collective bargaining agreement by contracting out the district's school bus transportation work to a private company. After

Superintendent Fite denied the grievance, the parties submitted the matter to arbitration, the final step of the grievance procedure.

{¶ 10} In a letter dated August 20, 1998, OAPSE demanded, on behalf of the bargaining unit employees, that the Board members "honor their continuing and limited statutory employment contracts previously issued by the Board and still in effect." Receiving no satisfactory response, appellants sought to enforce their statutory rights in court.

{¶ 11} On August 24, 1998, appellants initiated this cause by filing a complaint for a writ of mandamus in the Court of Appeals for Clermont County. In their complaint, appellants sought to compel appellees to reinstate the laid-off employees to their positions as public employee bus drivers and bus mechanic. Appellants also requested that the court of appeals award the laid-off employees all back pay and lost fringe benefits and that the Board be required to recognize the employees' continuing statutory employment contracts and honor the contracts in the future. Finally, appellants requested a writ ordering appellees to return all transportation work to the deemed-certified bargaining unit and to maintain the status quo.

{¶ 12} Both parties filed motions for summary judgment. In an opinion and judgment entry dated May 10, 1999, the court of appeals granted appellees' motion for summary judgment, denied appellants' motion for summary judgment, and denied the requested writ of mandamus. The court of appeals held that, pursuant to R.C. 4117.10(A), the terms of the collective bargaining agreement prevailed over the nonteaching school employees' statutory rights set forth in R.C. 3319.081. Thus, the court of appeals determined that the Board's actions were proper according to the terms of the collective bargaining agreement and upheld the Board's decision to abolish the bus driver and mechanic positions and lay off the individual appellants.

{¶ 13} In May 1999, appellants appealed the decision of the court of appeals to this court. We granted appellants' request for oral argument, and oral argument was held on February 22, 2000.

{¶ 14} The cause is now before the court upon an appeal as of right.

_____

*Buckley, King & Bluso* and *James E. Melle*, for appellants.

*Ennis, Roberts & Fischer, C. Bronston McCord III* and *George E. Roberts III,* for appellees.

_____

**DOUGLAS, J.**

{¶ 15} Appellants initially contend that the court of appeals erred in determining that the collective bargaining agreement prevailed over the statutory rights for nonteaching employees in R.C. 3319.081. Specifically, appellants contend that the layoff provision of the collective bargaining agreement does not expressly preempt the bargaining unit employees' statutory employment contracts and other rights guaranteed by R.C. 3319.081. In contrast, appellees argue that pursuant to R.C. 4117.10(A), the employment relationship between the parties is governed by the collective bargaining agreement. Appellees point out that since the agreement granted the Board the ability to abolish positions and lay off employees, the Board was acting within its authority when it abolished the positions of school bus driver and mechanic and laid off the individual appellants herein.

I

{¶ 16} R.C. 4117.10(A)[2] provides:

"An agreement between a public employer and an exclusive representative entered into pursuant to this chapter governs the wages, hours, and terms and conditions of public employment covered by the agreement. * * * Where no

_____

2. R.C. 4117.10(A) has subsequently been amended by 1998 Am.Sub.H.B. No. 348, effective March 22, 1999. The amendment has no bearing on the case at bar.

agreement exists or where an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to wages, hours, and terms and conditions of employment for public employees. * * * [T]his chapter prevails over any and all other conflicting laws, resolutions, provisions, present or future, except as otherwise specified in this chapter or as otherwise specified by the general assembly."

{¶ 17} R.C. 4117.10(A) outlines the relationship between a collective bargaining agreement and all applicable state and local laws. Appellants concede that the collective bargaining agreement authorized the Board to abolish positions and lay off school bus drivers and mechanics. Nevertheless, appellants assert that the Board, notwithstanding R.C. 4117.10(A), was not authorized to contract with a private company to perform the same work previously performed by the laid off employees. We agree.

{¶ 18} R.C. 3319.081 requires local school district boards of education to enter into written contracts of employment with nonteaching public school employees. Newly hired, regular nonteaching school employees enter into employment contracts with the school board for a period of not more than one year. If they are rehired, the school board is required to offer a written, two-year contract with those employees. R.C. 3319.081(A). If a nonteaching employee is retained at the end of a two-year contract, the school board must offer the employee a continuing contract of employment. R.C. 3319.081(B).

{¶ 19} It is axiomatic that R.C. 3319.081 was intended to provide certain protections to those employees covered by the statute. "R.C. 3319.081 gives statutory job security to nonteaching local school district employees, in that it provides for termination of employment contracts *only* for the express enumerated reasons set forth in R.C. 3319.081(C), or for 'any other acts of misfeasance, malfeasance, or nonfeasance.' " (Emphasis *sic*.) *State ex rel. Boggs v. Springfield*

*Local School Dist. Bd. of Edn.* (1998), 82 Ohio St.3d 222, 226, 694 N.E.2d 1346, 1350. See, also, *Ohio Assn. of Pub. School Emp. v. Twin Valley Local School Dist. Bd. of Edn.* (1983), 6 Ohio St.3d 178, 182, 6 OBR 235, 238, 451 N.E.2d 1211, 1214 (noting that the purpose of R.C. 3319.081 is to provide employment security to regular nonteaching school employees).

{¶ 20} Moreover, nothing in R.C. 3319.081 or any other statutory provision authorizes layoffs of nonteaching local school district personnel. Therefore, in the absence of a collective bargaining agreement, R.C. 3319.081 prohibits a school district's board of education from abolishing positions and laying off nonteaching personnel. *Boggs*, 82 Ohio St.3d at 226-227, 694 N.E.2d at 1350.

{¶ 21} In the case at bar, the collective bargaining agreement, as previously indicated, authorized the Board to abolish positions and lay off employees. Nevertheless, given the protections afforded by R.C. 3319.081, as well as prior pronouncements of this court, we do not believe that the collective bargaining agreement herein permitted the Board to lay off public employees by abolishing positions while, in effect, retaining the same positions and hiring nonpublic employees to fill them.

{¶ 22} In *State ex rel. Clark v. Greater Cleveland Regional Transit Auth.* (1990), 48 Ohio St.3d 19, 548 N.E.2d 940, the court addressed the interplay between public employees' statutory rights and provisions of a collective bargaining agreement that purport to preempt those statutory rights pursuant to R.C. 4117.10(A). The issue before the court in *Clark* was whether certain public employees of the Greater Cleveland Regional Transit Authority were entitled to previously earned vacation credit pursuant to R.C. 9.44 when those employees were covered by a collective bargaining agreement that included a vacation-eligibility provision. We held that "R.C. 9.44 imposes a mandatory duty on any political subdivision of the state of Ohio to credit employees with prior service vacation credit, absent a collective bargaining agreement entered into pursuant to R.C.

Chapter 4117 which specifically excludes rights accrued under R.C. 9.44. (R.C. 4117.10[A], construed.)" *Id.* at syllabus. In construing R.C. 4117.10(A), we noted that "when the agreement makes *no specification* about a matter pertaining to wages, hours and terms and conditions of employment, the parties are governed by all state or local laws or ordinances addressing such terms and conditions of employment." (Emphasis *sic*.) *Id.* at 22, 548 N.E.2d at 943. In determining that the employees were entitled to their previously earned vacation credit pursuant to R.C. 9.44, we reasoned that despite a provision in the collective bargaining agreement addressing the computation of vacation leave, the provision did not specifically address the question of *prior* service vacation credit. *Id.*

{¶ 23} In *Naylor v. Cardinal Local School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 162, 630 N.E.2d 725, the court again addressed the applicability of R.C. 4117.10(A) in relation to public employees' statutory rights. Under consideration in *Naylor* were the statutory evaluation procedures for schoolteachers set forth in R.C. 3319.11 and 3319.111 and whether contract-renewal and teacher-evaluation provisions in the parties' collective bargaining agreement prevailed over those procedures outlined in R.C. 3319.111. We held that "[u]nless a collective bargaining agreement specifically provides to the contrary, R.C. 3319.111 governs the evaluation of a teacher employed under a limited contract." *Id.* at paragraph two of the syllabus. Because the collective bargaining agreement in *Naylor* was entered into before the effective date of R.C. 3319.111, the court concluded that it could not have specifically excluded or negated the rights contained in the statute. *Id.* at 165, 630 N.E.2d at 728.

{¶ 24} As our decisions in *Clark* and *Naylor* demonstrate, "a collective bargaining agreement must *specifically exclude* statutory rights in order to negate the application of those rights." (Emphasis added.) *Naylor*, 69 Ohio St.3d at 165, 630 N.E.2d at 728. In the case at bar, appellees contend that the collective bargaining agreement controls the rights and duties of the parties and, therefore, the

individual appellants' statutory employment rights are not implicated. We respectfully disagree. Article 13 of the parties' collective bargaining agreement is merely a general layoff and recall provision, and says nothing about employees' statutory rights guaranteed by R.C. 3319.081. Appellees would have us conclude that the layoff provision in this collective bargaining agreement is meant to nullify the job security protections afforded by R.C. 3319.081. However, we are not persuaded that by the use of such *general* language, the parties intended to preempt R.C. 3319.081. Had there been a mutual intent to preempt the job security protections in R.C. 3319.081, the parties could have easily specified that intent in the collective bargaining agreement.

{¶ 25} Furthermore, our decision in *Clark* also turned on the fact that no conflict existed between the statute at issue and the provisions of the collective bargaining agreement. See, also, *Streetsboro Edn. Assn. v. Streetsboro City School Dist. Bd. of Edn.* (1994), 68 Ohio St.3d 288, 291, 626 N.E.2d 110, 113 ("if a collective bargaining agreement makes no specification about a matter [*i.e.,* if there is *no conflict* between a law and the agreement], then R.C. 4117.10[A] further provides that state and local laws generally apply to a public employer and its public employees regarding 'wages, hours and terms and conditions' of employment"). (Emphasis added and bracketed material *sic*.) In *Clark*, we noted that if there is no clear conflict between the agreement and the statutory provision, "R.C. 4117.10(A) clearly requires that the parties be subject to all laws pertaining to wages, hours and terms and conditions of employment * * *." *Clark*, 48 Ohio St.3d at 23, 548 N.E.2d at 943-944.

{¶ 26} Here, because the collective bargaining agreement failed to specifically exclude the employees' statutory rights, no clear conflict exists between the agreement and the statute. Effect can be given to both R.C. 3319.081 and the layoff provision. For instance, the individual appellants could be laid off, and subject to the recall provisions of the agreement, while their statutory rights

remained in effect. However, the manner in which the Board invoked the layoff provision was clearly not sanctioned by the terms of the agreement. Although the collective bargaining agreement provided generally for job abolishment and personnel layoffs, the Board went beyond the language set forth in the layoff provision when it discharged its employees and contracted with a private company to perform identical services.

{¶ 27} Moreover, we must construe the language of the parties' agreement to avoid a "manifest absurdity." *Shifrin v. Forest City Ent., Inc.* (1992), 64 Ohio St.3d 635, 638, 597 N.E.2d 499, 501. The result reached herein is consistent with that duty. The parties could not have intended that the Board's general authority to abolish positions and lay off employees gave the Board blanket authority to transfer duties performed by public employees to private companies. If the Board had such overriding authority, the job security of nonteaching public school employees guaranteed by R.C. 3319.081 would be a nullity. Furthermore, if that were the case, then nothing would prevent the Board from outsourcing all of the bargaining unit work even though the agreement lacked specific, express authorization to that effect. As there is nothing in the collective bargaining agreement that would specifically permit the abolition of jobs and layoffs of these employees when their duties are merely transferred to a private company, we will not infer that that was the intent of the parties.

{¶ 28} Accordingly, we hold that, in order to negate statutory rights of public employees, a collective bargaining agreement must use language with such specificity as to explicitly demonstrate that the intent of the parties was to preempt statutory rights. Because the parties' collective bargaining agreement did not specifically permit the Board's actions herein, the individual appellants' rights pursuant to R.C. 3319.081 prevail.

II

**{¶ 29}** The final issue that we must decide is whether appellants are entitled to the requested writ of mandamus. In order for a writ of mandamus to issue, it must be shown that there is a clear legal right to the relief prayed for, that there is a clear legal duty upon respondent to perform the requested action, and that the relator has no adequate remedy at law. *State ex rel. Natl. City Bank v. Cleveland City School Dist. Bd. of Edn.* (1977), 52 Ohio St.2d 81, 84, 6 O.O.3d 288, 290, 369 N.E.2d 1200, 1202.

**{¶ 30}** Appellants had a clear legal right, pursuant to R.C. 3319.081, to retain their positions as public employees with the Batavia Local School District. Further, because the collective bargaining agreement did not specifically preempt individual appellants' statutory rights, appellees had a clear legal duty to recognize those rights. We also find that appellants had no adequate remedy at law. While the parties' collective bargaining agreement did contain a grievance and arbitration procedure, appellants are seeking the enforcement of their statutory employment rights pursuant to R.C. 3319.081 and are not seeking the enforcement of any specific provision of the collective bargaining agreement. Therefore, we conclude that the grievance and arbitration procedure would not provide an adequate remedy, since the individual appellants' rights to continued employment with the Board arise from statutory authority rather than the collective bargaining agreement. See *State ex rel. The V Cos. v. Marshall* (1998), 81 Ohio St.3d 467, 472, 692 N.E.2d 198, 203. See, also, *State ex rel. Ms. Parsons Constr., Inc. v. Moyer* (1995), 72 Ohio St.3d 404, 406-407, 650 N.E.2d 472, 474.

**{¶ 31}** Accordingly, we reverse the judgment of the court of appeals, grant the requested writ of mandamus compelling the reinstatement of the individual appellants to public employment with the Board, and remand this matter to the court of appeals for a determination of an award of back pay and lost fringe benefits.

*Judgment reversed,*

*writ granted,*

*and cause remanded.*

RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., and LUNDBERG STRATTON, J., dissent.

COOK, J., dissents.

_____

**COOK, J., dissenting.**

{¶ 32} I would affirm the judgment of the court of appeals.

_____

**LUNDBERG STRATTON, J., dissenting**.

{¶ 33} The majority holds that the appellants are entitled to a writ of mandamus to compel the Board to reinstate them as public employees of the state. The majority issues the writ based on the premise that the collective bargaining agreement herein did not evidence an intent to negate rights provided to employees under R.C. 3319.081. Specifically, the majority states: "We do not believe that the collective bargaining agreement herein permitted the Board to lay off public employees by abolishing positions while, in effect, retaining the same positions and hiring nonpublic employees to fill them." While I do not necessarily disagree with the majority's conclusion that the Board's actions may not have been a layoff as that term is used in the collective bargaining agreement, I believe that the issue should have been more properly addressed through arbitration.

{¶ 34} The appellants' jobs were terminated, but the same jobs were subsequently outsourced. The collective bargaining agreement gave the Board the right to lay off employees. A layoff is "[t]he termination of employment at the employer's instigation; esp., the termination—either temporary or permanent—of a large number of employees at the same time." Black's Law Dictionary (7 Ed.1999) 896. "Layoff" generally connotes a lack of work or deliberate reduction in work force. Webster's Third International Dictionary (1986) 1281.

12

**{¶ 35}** The Board believes that its actions in regard to appellants were "layoff[s]" as the term is used in the collective bargaining agreement. While I agree with the majority that a layoff may not contemplate terminating a position and immediately outsourcing the position, I believe the Board's actions against appellants were sufficiently within the scope of the collective bargaining agreement to be subject to arbitration.

**{¶ 36}** Public policy favors the arbitrability of labor disputes. *Davidson v. Bucklew* (1992), 90 Ohio App.3d 328, 331, 629 N.E.2d 456, 457-458. It is the court that determines whether a specific grievance is arbitrable. *AT&T Technologies, Inc. v. Communications Workers of Am.* (1986), 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648, 656. However, in deciding whether a contract creates a duty to arbitrate a certain grievance, "a court is not to rule on the potential merits of the underlying claims." *Id.* at 649, 106 S.Ct. at 1419, 89 L.Ed.2d at 656.

**{¶ 37}** In deciding whether the collective bargaining agreement creates a duty to arbitrate a certain grievance, the court must determine whether the claim is governed by the collective bargaining agreement. *United Steelworkers of Am. v. Am. Mfg. Co.* (1960), 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403, 1407. A court should not deny an arbitration clause in a contract unless it may be said with positive assurance that the clause is not susceptible of an interpretation that covers the asserted dispute, with any doubts resolved in favor of arbitration. *Gibbons-Grable Co. v. Gilbane Bldg. Co.* (1986), 34 Ohio App.3d 170, 173, 517 N.E.2d 559, 562. An arbitration clause in a contract gives rise to a presumption that the grievance is arbitrable unless expressly excluded or there exists "the most forceful evidence of a purpose to exclude the claim from arbitration." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 585, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409, 1419.

**{¶ 38}** Under this standard, I believe that arbitration should have resolved the issue of the scope of the Board's layoff authority provided in the collective

bargaining agreement. Even the appellants concede that a "layoff" is allowed by the collective bargaining agreement. The parties differ as to the scope or intent of the layoff provision as it relates to the Board's actions. Despite this disagreement, clearly the Board's initial action against appellants was to terminate their jobs. This action fits the definition of the term "layoff" as I discussed above. I believe that makes the appellants' grievance arbitable. Whether "layoff" was intended to include the immediate outsourcing of those job positions is an issue an arbitrator should have decided, not this court.

{¶ 39} In the context of employment contracts, where the dispute between labor and management arises from a collective bargaining agreement, the grievance and arbitration procedures provided therein constitute an adequate remedy at law *to the exclusion of extraordinary relief in mandamus*. *State ex rel. Zimmerman v. Tompkins* (1996), 75 Ohio St.3d 447, 449, 663 N.E.2d 639, 641, citing *State ex rel. Johnson v. Cleveland Hts./Univ. Hts. School Dist. Bd. of Edn.* (1995), 73 Ohio St.3d 189, 192-193, 652 N.E.2d 750, 752; *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.* (1994), 71 Ohio St.3d 26, 34, 641 N.E.2d 188, 196.

{¶ 40} In addition to my dismay at the majority's failure to determine that this issue should have been resolved through arbitration, I am equally distressed at the depth of explicit detail that will now be required of drafters of collective bargaining agreements because of the majority's syllabus. I believe that the majority's mandate that collective bargaining must be extremely specific in order to bring an issue within its coverage will ultimately do the collective bargaining process a disservice. We should be encouraging the resolution of employment issues through the arbitration process. With this new, narrow standard, we have opened the door to litigation, and every matter not specifically itemized in a collective bargaining agreement will become an issue for the courts. I believe that the majority's holding will be as detrimental to the unions as to the employees when they each find themselves on the side appealing an issue that might be implied but

was not specified sufficiently in the collective bargaining agreement. I do not believe that the law requires that we interpret collective bargaining agreements as narrowly as the majority dictates.

{¶ 41} Therefore, because I believe that the majority's syllabus will make collective bargaining agreements overly complex and technical, and because I believe that the majority's issuance of the writ of mandamus was improper because appellants had a remedy in the ordinary course of the law by way of arbitration, I respectfully dissent.

MOYER, C.J., concurs in the foregoing dissenting opinion.

————————————