DECISION
{¶ 1} Relator, Brenda Rose, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Kenneth Blackwell, Ohio Secretary of State, to restore her to her position and pay of Customer Service Assistant 2, effective June 1, 2001, and to restore to her any related benefits.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that a writ of mandamus should be denied because relator's terms of employment were subject to a collective bargaining agreement ("CBA"), which did not provide relator with fewer rights than she was afforded under the relevant statutory provisions, and that the CBA grievance process, which reached a result adverse to relator, was the exclusive method of resolving relator's grievance.
 {¶ 3} Alternately, the magistrate concluded that, even if the Ohio Revised Code provisions apply, summary judgment in favor of respondent is warranted because respondent did not abuse its discretion by returning relator to service after June 1, 2001. According to the magistrate's decision, after relator's appeal of the determination of the Ohio Public Employees Retirement System retirement board concluded on May 16, 2001, relator did not fulfill her duty to provide respondent with substantial, credible medical evidence that she was capable of performing the essential portions of her job duties by June 6, 2001. When relator did not do so, respondent requested a fitness examination that would demonstrate relator's fitness to return to work. After a medical examination on June 13, 2001, respondent reinstated relator effective the first day of the next pay period after respondent received the report from the examining physician. Thus, the magistrate concluded there was no showing that respondent's determination was unreasonable, arbitrary or unconscionable, and no genuine issue of material fact supporting relator's request for a writ of mandamus.
 {¶ 4} Relator has filed objections to the magistrate's decision in which she argues the magistrate erroneously interpreted pertinent case law, applied the wrong administrative code section, and erroneously determined that respondent lawfully required relator to submit medical evidence. Relator essentially claims that respondent's request for an additional medical evaluation prior to permitting her to return to work was not statutorily required and resulted in a delay in her reinstatement for which she should be compensated.
 {¶ 5} Respondent counters that R.C. 145.362 entitled respondent to request documentation from a physician certifying relator's fitness to return to work; and, in addition, Ohio Adm. Code 123:1-33-01(A) permitted respondent to require relator to submit to a medical examination at any time respondent reasonably deemed necessary.
 {¶ 6} Having reviewed State ex rel. Clark v. GreaterCleveland Regional Transit Auth. (1990), 48 Ohio St.3d 19, andState ex rel. Ohio Assn. of Pub. School Emp./AFSCME, Local 4,AFL-CIO v. Batavia Local School Dist. Bd. of Edn. (2000),89 Ohio St.3d 191, we conclude the magistrate properly analyzed these cases, and that the CBA governing the terms of relator's employment in this case afforded relator at least as many rights as she would have had pursuant to relevant statutes. In addition, although we agree with relator that there does not appear to be statutory authority requiring her to submit medical evidence prior to reinstatement, there is statutory authority permitting respondent to request a medical examination at any time it deems reasonably necessary, and, under these facts, respondent's request was reasonable. Relator suffered from asthma, and there was evidence that perfumes in the air at her workplace exacerbated her problem. Prior to permitting relator's return to the office, it was not unreasonable for respondent to seek a medical opinion that it would be safe for her to do so. Thus, we agree with the magistrate that relator has not demonstrated respondent abused its discretion, and, therefore, relator is not entitled to a writ of mandamus.
 {¶ 7} Based upon a review of the magistrate's decision and an independent review of the evidence, this court adopts the magistrate's decision, as attached and corrected at ¶ 16, 18, 36 and 42, as its own. Relator's objections to the magistrate's decision are overruled, respondent's motion for summary judgment is granted, and the requested writ of mandamus is denied.
Objections overruled, summary judgment granted, writ ofmandamus denied.
Lazarus, P.J., and Sadler, J., concur.
 APPENDIX IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Brenda Rose, : Relator, : v. : No. 04AP-273 Kenneth Blackwell, : (REGULAR CALENDAR) Ohio Secretary of State, : Respondent. :
Michael A. Moses, for relator.
Downes, Hurst Fishel, Jonathan J. Downes and Kathleen C.Madden, for respondent.
 MAGISTRATE'S DECISION IN MANDAMUS ON MOTION FOR SUMMARY JUDGMENT {¶ 8} Relator, Brenda Rose, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Kenneth Blackwell, Ohio Secretary of State, to restore her to her position and pay of Customer Service Assistant 2, effective June 1, 2001, and to restore to her any related benefits, including, but not limited to, back pay, step increases, longevity pay supplements, and corrections of her records of seniority and/or continuous service.
Findings of Fact:
 {¶ 9} 1. Relator has been an employee of respondent since November 20, 1978.
 {¶ 10} 2. Relator is a member of Communications Workers of America, Local 4501, which is the exclusive representative for all bargaining unit employees of respondent.
 {¶ 11} 3. Relator has been promoted several times, and, as of June 30, 1990, relator was in the position of Clerk III, which was in pay range 6.
 {¶ 12} 4. In April 1997, respondent received information that relator had an asthmatic condition. At that time, relator filed a request for medical leave. Apparently, exposure to various perfumes in the workplace was exacerbating her asthmatic condition.
 {¶ 13} 5. Relator was placed on disability leave on several occasions: August 5, 1998 to August 16, 1998; August 30, 1998 to December 27, 1998; December 28, 1998 to January 31, 1999; and from March 1, 1999 to March 31, 1999.
 {¶ 14} 6. On or about April 1, 1999, relator was granted disability retirement leave through the Ohio Public Employees Retirement System ("PERS").
 {¶ 15} 7. By letter dated February 21, 2001, John Finfgeld, supervisor of the disability benefits section of PERS, authored a letter to Cassandra Allen, a payroll officer of respondent, notifying her that relator's disability retirement benefit through PERS would be terminated by the PERS retirement board effective May 31, 2001, and reminding Ms. Allen that, pursuant to R.C. 145.362, relator retains her membership in the system and shall have been considered to be on a leave of absence during the first five years following the effective date of a disability benefit. Furthermore, Mr. Finfgeld reminded Ms. Allen that, pursuant to R.C. 145.362, relator shall be restored to the previous position and salary or a position and salary similar thereto.
 {¶ 16} 8. Relator had appealed the determination to terminate her disability retirement and, on May 16, 2001, the PERS retirement board sustained its previous action to remove relator from the disability [rolls].
 {¶ 17} 9. By certified letter dated May 30, 2001, Heidi Riggs, Director of Human Resources for respondent, notified relator that her disability retirement through PERS would terminate as of June 1, 2001, making her eligible for reinstatement. Furthermore, Ms. Riggs informed relator that she would need to provide medical documentation regarding her fitness to return to her full-time position as follows:
Should you believe that you are now able to perform all the duties and responsibilities of your position, you will need to provide documentation from your physician by June 6, 2001 authorizing that you are fit for duty and can return to your fulltime position. We reserve the right to obtain an independent medical evaluation depending upon the information submitted by your physician, prior to reinstating your employment with the Office of the Secretary of State.
Should you receive the appropriate medical clearances authorizing you are fit for duty and can return to work full-time, Human Resources will contact you with a start date of reinstatement. Please be aware that you have exhausted all leave balances as well as opportunities for leave without pay under the Family Medical Act. Therefore, please make sure you are able to resume the full-time duties of your position.
 {¶ 18} 10. By letter dated June 11, 2001, Ms. Riggs notified relator that an evaluation had been scheduled with Dr. William L. Licklider for Wednesday, June 13, 2001, at 3 p.m. The letter further provided as follows: "As your employer we are requesting this exam to determine if you are fit for duty and will pay all [costs] involved."
 {¶ 19} 11. By letter dated June 29, 2001, Dr. Licklider indicated that relator's condition had improved and that he believed that it was reasonable to have her return to work. He did note that she was sensitive to scents and perfumes and that, in the event she has another severe asthmatic episode, it would be necessary to isolate her from these working conditions and, if this is not possible, to consider her disabled.
 {¶ 20} 12. As of July 16, 2001, relator was reinstated by respondent from her disability separation. Because her prior job as a Clerk III had been abolished, she was placed in the Customer Service Assistant 2 position at a pay range of 9.
 {¶ 21} 13. On or about December 23, 2003, relator filed a grievance pursuant to the parties' Collective Bargaining Agreement ("CBA"). Relator requested a step increase retroactive to June 1, 2001, and one and one-half months of back pay. Relator argued that PERS "certified" her to return to work on June 1, 2001, but respondent did not actually return her to work until July 17, 2001.
 {¶ 22} 14. Relator received a First Level Response with regard to her grievance and was notified by letter dated December 31, 2003, as follows:
This is not a grievable issue. With respect to the allegations that have been presented in this first level grievance and the Articles of the Agreement the agreement has not been violated. Management takes the allegation of discrimination very seriously as it strives to maintain a mutual commitment to affirmative action which regard job opportunities within the Office of the Secretary of State.
 {¶ 23} 15. Relator appealed and received a Second Level Response with regard to her grievance. By letter date January 23, 2004, relator was notified that her grievance had been denied as follows:
a. Section 7.1 — Nondiscrimination
With respect to this article the grievant has not established that a violation occurred. Evidentiary documentation has not been provided to support the allegation that Ms. Riggs' decisions in the placement of personnel was based solely on "personal opinion". The circumstances of the events demonstrate that reasonable efforts were taken to bring Ms. Rose back to work.
b. Section 7.3 — ADA Compliance
With respect to this section the grievant has not established that a violation has occurred. Evidentiary documentation has not been provided to support that the employer has not made reasonable accommodations or that Ms. Rose's medical condition has been stated as a disability. The independent physician's statement from June 29, 2001 states "if she has another severe asthmatic episode, it will be necessary to isolate her from these working conditions, and if this is impossible, to consider her disabled."
It should be noted that this issue is untimely where the actual events that are alleged in the grievance statement took place from June 2001 through August 2003.
With respect to the Articles of the Agreement alleged violated that have been presented in this 2nd level grievance, the statement of grievance, and the associated documentation, there is no evidence to sustain a violation to the agreement. Management takes the allegation of discrimination very seriously as it strives to maintain a mutual commitment to affirmative action, as regards job opportunities within the Office of the Secretary of State.
This grievance is denied.
 {¶ 24} 16. Relator appealed and, on February 17, 2004, received a response to her Third Level Grievance which was ultimately denied as follows:
Per article 8.5 Grievance Procedure states that "grievancesinitiated more than (14) fourteen days after the event givingrise to the grievance shall not be considered timely". This issue has been ongoing since Ms. Rose's return on July 16, 2001. Human Resources has met and discussed this issue with Ms. Rose on several occasions. Ms. Rose had union representation with her at all meetings. The last time this was addressed, it was put in writing to Ms. Rose on October 8, 2003. This grievance is untimely and therefore, denied.
(Emphasis sic.)
 {¶ 25} 17. Thereafter, relator filed the instant mandamus action in this court.
 {¶ 26} 18. Respondent filed a motion to dismiss and/or motion for judgment on the merits which this magistrate converted to a motion for summary judgment.
 {¶ 27} 19. The matter is now before the magistrate as a motion for summary judgment.
Conclusions of Law:
 {¶ 28} Relator seeks a writ of mandamus compelling respondent to make the effective day of her reinstatement June 1, 2001, pay her approximately one and one-half months back pay, and grant her a corresponding step increase to which she deems herself entitled. The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law.State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28.
 {¶ 29} A motion for summary judgment requires the moving party to set forth the legal and factual basis supporting the motion. To do so, the moving party must identify portions of the record which demonstrate the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280. Accordingly, any party moving for summary judgment must satisfy a three-prong inquiry showing: (1) that there is no genuine issue as to any material fact; (2) that the parties are entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, which conclusion is adverse to the party against whom the motion for summary judgment is made.Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64.
 {¶ 30} Respondent raises numerous arguments why summary judgment is appropriate and this magistrate finds the following two to have merit. As such, for the following reasons, the magistrate recommends that this court grant summary judgment in favor of respondent.
 {¶ 31} As noted in the findings of fact, relator is a member of Communication Workers of America, Local 5401, which is the exclusive representative for the bargaining unit of employees of respondent. The following portion of R.C. 4117.10 is relevant:
An agreement between a public employer and an exclusive representative entered into pursuant to this chapter governs the wages, hours, and terms and conditions of public employment covered by the agreement. If the agreement provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure and the state personnel board of review or civil service commissions have no jurisdiction to receive and determine any appeals relating to matters that were the subject of a final and binding grievance procedure. * * *
 {¶ 32} Article 8 of the CBA provides for the Grievance Procedure and Section 8.1 sets out the purpose as follows:
The Secretary of State and the Union recognize that in the interest of harmonious relations, a procedure is necessary whereby the Union and employees can be assured of prompt, impartial and fair processing of their grievances. Such procedure shall be available to all bargaining unit employees and no reprisals of any kind shall be taken against any employee initiating or participating in the grievance procedure. The grievance procedure shall be the exclusive method of resolving grievances except where law provides other valid jurisdiction over the subject matter.
 {¶ 33} Pursuant to the above statute and Section 8.1 of Article 8, the grievance procedure initiated by relator was the exclusive method of resolving any grievance raised by relator. As stated in the findings of fact, relator received a step 3 grievance which was ultimately denied. It was determined that relator had not presented a grievable issue under the CBA and that her grievance was untimely.
 {¶ 34} Relator contends that the provisions of the CBA cannot supersede her statutory rights and cites State ex rel. Clark v.Greater Cleveland Regional Transit Auth. (1990),48 Ohio St.3d 19, and State ex rel. Ohio Assn. of Pub. School Emp./AFSCME,Local 4, AFL-CIO v. Batavia Local School Dist. Bd. of Edn.
(2000), 89 Ohio St.3d 191. However, for the reasons that follow, this magistrate finds those cases distinguishable.
 {¶ 35} In Clark, public employees of the Greater Cleveland Regional Transit Authority had argued that they were entitled to previously earned vacation credit pursuant to R.C. 9.44. Even though these employees were covered by a collective bargaining agreement that contained a vacation-eligibility provision, the court reasoned that where the agreement makes no specification about a matter pertaining to wages, hours, and terms and conditions of employment, the parties are governed by all state and local laws or ordinances addressing such terms and conditions of employment. As such, despite the provision in the collective bargaining agreement addressing vacation leave, since the provision did not specifically address the question of prior service vacation, the court found that the Revised Code applied.
 {¶ 36} In Batavia, the Board of Education had abolished positions of public employees and laid off school bus drivers and mechanics and then contracted with a private company to perform the same work previously done by the public employees. The court reasoned that the article in question from the parties' collective bargaining agreement was merely a general layoff [and] recall provision which stated nothing about the employees' statutory rights under R.C. 3319.08. The court noted that, if [there] had been a mutual intent to preempt R.C. 3319.08, the parties could have easily expressed that intent in the collective bargaining agreement. As such, the court held that if a collective bargaining agreement is meant to negate statutory rights of public employees, the agreement must use language with such specificity as to explicitly demonstrate that the intent of the parties was to preempt statutory rights.
 {¶ 37} Unlike both Clark and Batavia, the rights accorded relator in her collective bargaining agreement mirror the statutory rights found in the Revised Code. Specifically, R.C.145.362 provides, in pertinent part, as follows:
A disability benefit recipient shall retain membership status and shall be considered on leave of absence from employment during the first five years following the effective date of a disability benefit, notwithstanding any contrary provisions in this chapter.
 {¶ 38} Upon termination of disability, "[t]he employer shall restore the recipient to the recipient's previous position and salary or to a position and salary similar thereto, unless the recipient was dismissed or resigned in lieu of dismissal for dishonesty, misfeasance, malfeasance, or conviction of a felony." Similarly, Article 16 of the CBA provides for Disability Leave and Section 16.5 provides, in pertinent part, as follows:
* * * The employee requesting to return from disability leave shall be eligible for reinstatement upon the submission of appropriate medical documentation which must show that the employee has recovered sufficiently to be able to perform the substantial and material duties of the position to which reinstatement is sought.
 {¶ 39} Thereafter, Article 15, Leave of Absence, applied in Section 15.4 provides, in pertinent part, as follows:
Upon completion of the leave of absence, the employee is to be returned to the classification at the same rate of pay formerly occupied, or to a similar classification if the employee's former classification no longer exists. * * *
 {¶ 40} Clearly, unlike the situations in Clark andBatavia, the Revised Code provisions did not provide relator with any greater rights than she already had under the collective bargaining agreement. As such, the magistrate concludes that the collective bargaining agreement did apply and relator is not entitled to a writ of mandamus.
 {¶ 41} In the event that this court determines that the Revised Code provisions do apply, this magistrate still finds that summary judgment in favor of respondent is warranted. The issue would then become whether respondent had abused its discretion by returning relator to service after June 1, 2001. Ohio Adm. Code 123:1-33-04 provides, in pertinent part, as follows:
(A) An employee may make a written request to the appointing authority for reinstatement from a disability separation. The employee's request shall be accompanied by substantial, credible medical evidence that the employee is once again capable of performing the essential portions of the employee's job duties * * *.
(B) When a disability separated employee presents to the appointing authority substantial, credible medical evidence which states that the employee is once again capable of performing the essential job duties of the employee's assigned position, the appointing authority shall either reinstate the employee or require the employee to submit to a medical * * * examination in accordance with rule 123:1-33-01 of the Administrative Code.
(C) The appointing authority shall reinstate the employee after receiving the results of that examination if the appointing authority determines that the employee is once again capable of performing the essential duties of the employee's assigned position.
 {¶ 42} Based upon the above regulations, it is clear that relator had a duty to provide respondent with substantial, credible medical evidence that she was once again capable of performing the essential portions of her job duties and that respondent likewise had the right to require relator to submit to a medical examination in accordance with Ohio Adm. Code123:1-33-01, even where relator had presented credible medical evidence stating that she was once again capable of performing the essential job duties of her assigned position. In the present case, relator's appeal of the determination of the PERS retirement board was concluded May 16, 2001, and resulted in a decision to remove relator from the disability rolls. Thereafter, relator did not submit any evidence to respondent that she was, indeed, capable of returning to work and performing the essential portions of her job duties. On May 30, 2001, relator was notified by Ms. Riggs, the Director of Human Services for respondent[,] that she needed to provide documentation of her fitness for duty by June 6, 2001. Relator did not do so and was thereafter scheduled for an examination with Dr. Licklider on June 13, 2001. Dr. Licklider rendered his report on June 29, 2001, and concluded that relator could return to work. Ms. Riggs then reinstated her, effective the first day of the next pay period.
 {¶ 43} A writ of mandamus would be warranted where respondent's determination was unreasonable, arbitrary or unconscionable. In the present case, the determination was neither. Instead, there is no showing of an abuse of discretion on the part of respondent scheduling her for a medical exam and, thereafter, in reinstating relator effective July 16, 2001, and respondent's motion for summary judgment should be granted.
 {¶ 44} Based on the foregoing, the magistrate concludes that relator has not demonstrated entitlement to a writ of mandamus but that respondent has demonstrated that it is entitled to judgment as a matter of law. This court should grant summary judgment in favor of respondent and deny relator's request for a writ of mandamus.