[Cite as *State ex rel. Ohio Assn. of Pub. School Emps. v. Willoughby-Eastlake City School Dist.*, 2022-Ohio-4242.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE ex rel. OHIO ASSOCIATION
OF PUBLIC SCHOOL EMPLOYEES
(OAPSE)/AFSCME LOCAL 4,
AFL-CIO, AND ITS LOCALS NOS.
159 AND 163, et al.,

          Plaintiffs-Appellees,

   - v -

WILLOUGHBY-EASTLAKE CITY
SCHOOL DISTRICT,

          Defendant-Appellant.

CASE NO. 2021-L-009


Civil Appeal from the
Court of Common Pleas


Trial Court No. 2020 CV 001502

---

# O P I N I O N

Decided: November 28, 2022
Judgment: Reversed; remanded

---

*Thomas C. Drabick, Jr.*, OAPSE Director of Legal Services, 6805 Oak Creek Drive, Columbus, Ohio 43229 (For Plaintiffs-Appellees).

*Mark S. Fusco, Eric J. Johnson, Sara Ravas Cooper,* and *Peter T. Zawadski*, Walter & Haverfield, LLP, The Tower at Erieview, 1301 East Ninth Street, Suite 3500, Cleveland, Ohio 44114 (For Defendant-Appellant).


THOMAS R. WRIGHT, P.J.

{¶1} Appellant in this matter is Willoughby-Eastlake City School District ("Board"). Appellees are the Ohio Association of Public School Employees (OAPSE)/AFSCME Local 4, AFL-CIO, its Locals 159 and 163, and certain classified nonteaching public school employees employed by the Willoughby-Eastlake City School District (collectively "Union").

{¶2} According to the complaint, Local 159 represents "all full time and regular contract cafeteria employees"; Local 163 represents cleaners, custodians, maintenance, truck drivers, mechanics, carpenters, electricians, plumbers, HVAC technicians, painters, and masons. As the exclusive bargaining representatives for the employees, Local 159 and Local 163 entered into collective bargaining agreements with the Board governing the terms and conditions of employment from September 1, 2019 through August 31, 2021 ("CBAs"). The CBAs include provisions regarding reductions in force, calamity days, and grievance procedures culminating with final and binding arbitration.

{¶3} During the 2020-2021 academic year, the Board transitioned to remote instruction due to the COVID-19 pandemic. The buildings remained open for teachers, administrators, secretaries, and certain special education students. On November 19, 2020, the Board voted to implement a reduction in force of nonteaching employees effective December 16, 2020. The employees' wages were suspended, and their health insurance benefits were to be cancelled.

{¶4} On December 16, 2020, the Union filed a complaint in mandamus and for other relief. The Union alleged, inter alia, that there is no valid reason justifying the reduction in force and that by implementing the reduction during the COVID-19 pandemic, the Board is in violation of R.C. 3319.081(G). The statute provides:

> All nonteaching employees employed pursuant to this section and Chapter 124. of the Revised Code shall be paid for all time lost when the schools in which they are employed are closed owing to an epidemic or other public calamity. Nothing in this division shall be construed as requiring payment in excess of an employee's regular wage rate or salary for any time worked while the school in which the employee is employed is officially closed for the reasons set forth in this division.

2

R.C. 3319.081(G). The Union requested, in pertinent part, that the trial court "issue an order in mandamus directing the [Board] to invalidate the RIFs [reduction in force] and pay the Plaintiffs back wages, less any appropriate offsets." They also requested a preliminary injunction preserving the status quo as it existed prior to December 16, 2020, regarding the employees' wages and health insurance benefits.

{¶5} The trial court granted a preliminary injunction in favor of the Union on December 31, 2020. In its order, the trial court determined the following with regard to the statutory language: COVID-19 is "an epidemic or other public calamity"; the laid off employees are "employed," despite the reduction in force; and even though students are being taught remotely, the schools are "closed" because the employees cannot report to the buildings to perform their duties. The trial court also concluded that it had jurisdiction to hear the matter because the rights asserted under R.C. 3319.081(G) are independent from the parties' CBAs.

{¶6} Ultimately, the trial court concluded that the Union showed by clear and convincing evidence that there is a substantial likelihood they will succeed on the merits of the case; that the employees will likely suffer irreparable harm if the injunction is not granted; that the Board will not be seriously harmed, possibly not harmed at all, and no third parties will be harmed if the injunction is granted; that the continued employment of the employees is in the public interest; and that granting the injunction will preserve the status quo.

{¶7} The trial court ordered the Board to comply with the requirements of R.C. 3319.081(G) by continuing to pay the employees' salaries and associated benefits, without interruption, until a trial on the merits of the issue can be held. Consequently, the

3

Board instructed the employees to return to work on their first regularly scheduled days of work following the school district's winter break. Thus, the employees were laid off without wages for a two-week period of time—from December 16, 2020 through January 4, 2021.

{¶8} The Board immediately appealed the preliminary injunction order. We denied the Union's motion to dismiss the appeal, concluding the trial court's order is a final appealable order pursuant to R.C. 2505.02(B)(4). The Board advances four assignments of error for our review:

> [1.] The trial court committed prejudicial error in granting Plaintiffs-Appellees' (OAPSE's) motion for a preliminary injunction based upon its opinion that R.C. 3319.081(G) prohibited a reduction in force that was otherwise permitted under the law and collective bargaining agreements, finding that Defendant-Appellant's schools were closed, the closure was owed to an epidemic or other public calamity, and Plaintiffs-Appellees were employed for purposes of R.C. 3319.081(G) even though they were laid off.
>
> [2.] The trial court committed prejudicial error in granting Plaintiffs-Appellees' motion for a preliminary injunction, finding that it had subject matter jurisdiction to review and reverse a reduction in force that was implemented under collective bargaining agreements containing grievance procedures that culminate in final and binding arbitration.
>
> [3.] The trial court committed prejudicial error in granting Plaintiffs-Appellees' motion for a preliminary injunction, finding that Plaintiffs-Appellees showed by clear and convincing evidence that there is a substantial likelihood that they would succeed on the merits of their case, they would likely suffer irreparable harm, Defendant-Appellant would not be harmed at all, the continued employment of Plaintiffs-Appellees was in the public interest, no third parties would be harmed by granting the injunction, and the injunction would preserve the status quo.

4

Case No. 2021-L-009

[4.] The trial court abused its discretion by granting OAPSE's motion for a preliminary injunction without first holding an evidentiary hearing.

{¶9} We initially address the Board's second assigned error, which raises the threshold issue of jurisdiction. Questions of subject matter jurisdiction are reviewed de novo, without deference to the trial court's conclusion. *Burns v. Daily*, 114 Ohio App.3d 693, 701, 683 N.E.2d 1164 (11th Dist.1996); *Cleveland v. Abrams*, 8th Dist. Cuyahoga Nos. 92843 & 92844, 2010-Ohio-662, ¶ 12. Subject matter jurisdiction is the power conferred upon a court, either by constitutional provision or by statute, to decide a particular matter or issue on its merits. *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 75, 701 N.E.2d 1002 (1998).

{¶10} The Board contends that, pursuant to R.C. 4117.10(A), the trial court lacks jurisdiction to adjudicate this case because the CBAs address the matter at issue and govern its resolution through the grievance and arbitration procedures. The Union responds that its complaint is based on allegations independent of the CBAs, thereby vesting the trial court with jurisdiction.

{¶11} "When an employee and an employer have entered into a collective bargaining agreement and a dispute arises, R.C. 4117 controls." (Citation omitted.) *Pulizzi v. Sandusky*, 6th Dist. Erie No. E-03-002, 2003-Ohio-5853, ¶ 9. "It is well settled that if a party asserts rights that are independent of R.C. Chapter 4117, then the party's complaint may properly be heard in common pleas court. However, if a party asserts claims that arise from or depend on the collective-bargaining rights created by R.C. Chapter 4117, the remedies provided in that chapter are exclusive." *Ohio Assn. of Pub. School Emps./AFSCME Local 4, AFL-CIO v. Madison Local School Dist. Bd. of Edn.*, 190

5

Ohio App.3d 254, 2010-Ohio-4942, 941 N.E.2d 834, ¶ 47 (11th Dist.), citing *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9*, 59 Ohio St.3d 167, 170-171, 572 N.E.2d 87 (1991). "Even when the rights asserted by a plaintiff are created by state law, if the application of the law is dependent on an analysis or interpretation of a collective bargaining agreement, the trial court lacks subject matter jurisdiction over the matter." (Citation omitted.) *Crawford v. Kirtland Local School Dist. Bd. of Edn.*, 2018-Ohio-4569, 124 N.E.3d 269, ¶ 31 (11th Dist.).

{¶12} "R.C. 4117.10(A) outlines the relationship between a collective bargaining agreement and all applicable state and local laws." *State ex rel. Ohio Assn. of Pub. School Emp./AFSCME, Local 4, AFL-CIO v. Batavia Local School Dist. Bd. of Edn.*, 89 Ohio St.3d 191, 195, 729 N.E.2d 743 (2000). The statute provides, in relevant part:

> An agreement between a public employer and an exclusive representative entered into pursuant to this chapter governs the wages, hours, and terms and conditions of public employment covered by the agreement. If the agreement provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure * * *.
>
> Where no agreement exists or where an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees.

R.C. 4117.10(A).

{¶13} Here, Article 6 of both CBAs outlines the "Grievance Procedure," defining "grievance" as "an alleged violation of a specific written provision of this Agreement" and requiring that any "such grievance shall be submitted to the following grievance procedure." Section 3(f) of Article 6 provides: "There shall be no appeal from an

6

Case No. 2021-L-009

arbitrator's decision if within the scope of his authority as set forth above. It shall be final and binding on the employee or employees involved in the grievance, and the Administration and the Board." Therefore, pursuant to R.C. 4117.10(A) and Article 6 of the CBAs, the grievance procedure, which culminates in final and binding arbitration, is the exclusive method of resolving any grievance that arises from or depends on the CBAs.

{¶14} The Union contends, however, that the basis of its complaint—that the Board violated R.C. 3119.081(G) by implementing a reduction in force during the COVID-19 pandemic—is a statutory right independent of the CBAs.

{¶15} The Supreme Court of Ohio has addressed similar arguments regarding the interplay between statutory rights and CBA provisions in several cases. For instance, when an explicit conflict exists between a CBA and a statute, the CBA prevails—unless one of the exceptions in R.C. 4117.10(A) applies (e.g., unemployment or workers' compensation laws will prevail in the face of an explicit conflict). *Streetsboro Edn. Assn. v. Streetsboro City School Dist. Bd. of Edn.*, 68 Ohio St.3d 288, 626 N.E.2d 110 (1994), syllabus; *see also Lucki v. Ohio Dept. of Rehab. & Corr.*, 197 Ohio App.3d 108, 2011-Ohio-5404, 966 N.E.2d 308, ¶ 10-12, 25 (10th Dist.). When a statute addresses a matter that is not addressed in a collective bargaining agreement, no conflict exists between the two, and the statute governs the parties as to that matter. *State ex rel. Clark v. Greater Cleveland Regional Transit Authority*, 48 Ohio St.3d 19, 22, 548 N.E.2d 940 (1990); *accord Naylor v. Cardinal Local School Dist. Bd. of Edn.*, 69 Ohio St.3d 162, 630 N.E.2d 725 (1994). And, when a collective bargaining agreement uses general language pertaining to a matter but does not use specific language explicitly demonstrating that the parties intended to preempt statutory rights, the statutory rights prevail. *Batavia,* 89 Ohio

7

St.3d at 198; *accord State ex rel. Tempesta v. Warren*, 128 Ohio St.3d 463, 946 N.E.2d 208 (2011); *see also United Elec. Radio & Machine Workers of Am. v. Highland Loc. School Dist. Bd. of Edn.*, 2018-Ohio-5307, 127 N.E.3d 377, ¶ 23-25 (5th Dist.).

**{¶16}** The Tenth District Court of Appeals has distinguished *Clark* and *Batavia* from a situation where the language of a collective bargaining agreement actually mirrored the language of a statute. *State ex rel. Rose v. Blackwell*, 10th Dist. Franklin No. 04AP-273, 2004-Ohio-6125, ¶ 34-40. The Tenth District concluded that because the employee's terms of employment were subject to a collective bargaining agreement that did not provide her with fewer rights than she was afforded under the relevant statutory provisions, the grievance process outlined in the agreement was the exclusive method of resolution. *Id.* at ¶ 6.

**{¶1}** Here, like *Rose*, the CBAs include language that mirrors the statutory rights found in R.C. 3319.081(G). Again, the statute provides:

> All nonteaching employees employed pursuant to this section and Chapter 124. of the Revised Code shall be paid for all time lost when the schools in which they are employed are closed owing to an epidemic or other public calamity. Nothing in this division shall be construed as requiring payment in excess of an employee's regular wage rate or salary for any time worked while the school in which the employee is employed is officially closed for the reasons set forth in this division.

R.C. 3319.081(G).

**{¶2}** Article 14 of both CBAs include provisions relating to "Force Reduction and Recall." Specifically, the CBA for Local 163 provides: "When it becomes necessary due to lack of work, lack of funds, or job abolishment to reduce the number of positions in a job classification within the bargaining unit, the following procedure shall be used[.]"

8

Case No. 2021-L-009

Similarly, the CBA for Local 159 provides: "*This shall be exclusive remedy for reducing the workforce by layoffs and shall not require the Board to fill any vacancy.* When it becomes necessary due to lack of work, lack of funds, *closing of a school*, or job abolishment to reduce the number of positions in a job classification within the bargaining unit, this procedure shall be used[.]" (Emphasis added to highlight the differences between the two CBAs.)

{¶3} Thereafter, Article 20 of each CBA provides for "Calamity Days." The CBA for Local 159 states:

> [A.] Employees shall be paid, within limits established by law, their appropriate rate of pay for all days or part of a day when schools in which they are employed are closed owing to an epidemic or other public calamity.

> [B.] Any employee who is required to work for the Board of Education on a calamity day shall be compensated at one and one half (1 ½) times his/her regular rate of pay for hours worked, in addition to his/her pay for calamity days. Minimum call in pay for this purpose will be one hour.

> [C.] Employees who arrive at work prior to the public (T.V., radio, etc.) or personal (telephone) notification of school closing, shall be paid a minimum of one hour at their regular hourly rate.

{¶4} The CBA for Local 163 similarly states:

> [A.] Within the limits established by law, employees shall be paid their appropriate rate of pay for all days or part of a day when schools in which they are employed are closed owing to an epidemic or other public calamity.

> [B.] Any employee required to work on a calamity day will be compensated at the rate of time and one-half (1 ½). Any employee who must report to his assignment prior to the time of school being cancelled (radio, T.V., telephone) will be paid

9

at the rate of time and one-half (1 ½) for hours worked. The Board may, however, elect to give compensatory time or pay for the hours worked.

[C.] Calamity days shall be counted as days worked for the purpose of determining the rate of overtime work payment.

{¶5} Given the fact that these CBA provisions track the language of the statute, the Union's assertions that, for example, "the statute is not contained nor incorporated into the parties' [CBA]" and "there is nothing in the parties' [CBAs] that address the issue," coupled with its concession that "specific interpretations of a provision of the [CBA] * * * always belong in arbitration," are perplexing. "It is axiomatic that R.C. 3319.081 was intended to provide certain protections to those employees covered by the statute." *Batavia*, 89 Ohio St.3d at 195; *State ex rel. Brannon v. Lakeview School Bd. of Edn.*, 2016-Ohio-1367, 62 N.E.3d 1003, ¶ 22 (11th Dist.) ("R.C. 3319.081 is a prophylactic statute enacted to provide job security to non-teacher employees within a school district."). But it is evident that R.C. 3319.081(G) does not provide the employees with any greater rights than they negotiated for and attained under the CBAs. Thus, even though the Union is asserting rights created by state law, the application of that law is dependent on an analysis or interpretation of the CBAs. And the exclusive method of resolution provided in the CBAs is the Grievance Procedure, which culminates in final and binding arbitration. We conclude, therefore, that the trial court lacks subject matter jurisdiction to review the Union's complaint and erred in granting the Union's motion for a preliminary injunction. *See Crawford*, 2018-Ohio-4569, at ¶ 31.

{¶6} The second assigned error is well taken.

10

{¶7} In its first assigned error, the Board raises issues of statutory interpretation pertaining to R.C. 3319.081(G). In its third and fourth assigned errors, the Board contends the trial court erred in granting the motion for a preliminary injunction on the merits and without first holding a hearing. Our conclusion under the Board's second assigned error renders these arguments moot.

{¶8} The judgment of the Lake County Court of Common Pleas is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

CYNTHIA WESTCOTT RICE, J.,

MARY JANE TRAPP, J.,

concur.

Case No. 2021-L-009