OPINION
{¶ 1} Plaintiff-appellant/cross-appellee, Jerry Ferreri, appeals the decision of the Clermont County Court of Common Pleas affirming the decision to terminate his employment by defendant-appellee/cross-appellant, Milford Exempted Village School District Board of Education ("Board"). In a cross-appeal, the Board appeals the lower court's denial of its motion to dismiss for lack of subject matter jurisdiction. We affirm the decision of the *Page 2 
common pleas court in both respects.
 {¶ 2} In November 1999, Ferreri was hired by the Board as a Maintenance Assistant and worked primarily on the buildings within the school district doing various tasks including carpentry, plumbing, electric installation or repair, and construction. After his contract for the first year expired, the Board gave Ferreri a two-year contract and then made him a tenured employee by renewing his contract after his full three-year probationary period ended. During his probationary period, Ferreri received positive evaluations and was labeled a "strong"[1] employee by his immediate supervisor, Bob Penders. However, at some point after this probationary period ended, Ferreri began receiving unenthusiastic evaluations which deemed him an "average" employee.[2]
 {¶ 3} On the evaluations, Penders cited Ferreri's poor attendance record and negative attitude as reasons for the downfall from a strong employee rating to average. Prior to the decrease in evaluation scores, Ferreri injured his back while moving chairs at a school building and had to miss approximately two weeks of work. Also preceding the more negative evaluations, Penders and Ferreri's working relationship deteriorated and several heated exchanges occurred during which Penders yelled at Fereri and used profanities. The instances resulted in Penders' attendance at a seminar designed to provide management with strategies for communicating with employees.
 {¶ 4} In order to investigate the incidents between Penders and Ferreri, the business manager for Milford Exempted Village, John Borchers, began a probe into the claims made by Ferreri. As a result, Borchers discovered that despite a directive otherwise, Ferreri was *Page 3 
discussing the incident with other employees.
 {¶ 5} Also, Borchers learned that Ferreri would occasionally sign his children out of school when he was supposed to be at work. Ferreri's children attended an elementary school within the Milford district and would be released around 3:30-3:50 each day for pickup. Ferreri, a second-shift employee, worked from 3:00 p.m. to 11:30 p.m. However, on several occasions, Ferreri would sign his children out and stay with them until their ride home came to pick them up. Ferreri claimed that he used his 15 minute break to do this or would use comp-time earned in lieu of overtime. However, the Board maintained that they do not offer comp-time for maintenance employees and Penders vehemently denied ever agreeing to let Ferreri use comp-time instead of receiving overtime pay.
 {¶ 6} Borchers also discovered that other employees had seen Ferreri with his children in a Board-owned vehicle that Ferreri used to travel between the various schools in the district. Ferreri explained that the children were in the van so that he could give them an after-school treat such as gum or a candy bar.
 {¶ 7} After his investigation was over, Borchers informed Ferreri that he was going to recommend that the Board terminate Ferreri's employment and then advised Ferreri that a meeting was scheduled for December 12, 2005, during which the Board would take action on his recommendation. During the meeting, the Board considered the evidence Borchers gathered, as well as Ferreri's rebuttal, and resolved to terminate Ferreri's employment contract.
 {¶ 8} On December 19, 2005, Ferreri filed a notice of appeal with the Clermont County Court of Common Pleas. The Board moved to dismiss because Ferreri had not exhausted the grievance process as set forth by the Board's collective bargaining agreement with its employees. However, the common pleas court dismissed the motion and held a hearing over two days in September and October of 2006. After the hearing and *Page 4 
consideration of post-hearing briefs, the common pleas court affirmed the Board's decision to terminate Ferreri's contract. It is from these two decisions that the parties now appeal. Ferreri raises a single assignment of error on appeal, and the Board raises one assignment of error in its cross-appeal. For ease of discussion, we begin with the error raised by the Board on its cross-appeal.
 {¶ 9} Cross-Assignment of Error No. 1:
 {¶ 10} "THE TRIAL COURT ERRED IN NOT GRANTING THE BOARD OF EDUCATION'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT AS FERRERI FAILED TO EXHUAST THE ADMINISTRATIVE REMEDIES AVAILABLE TO HIM."
 {¶ 11} In its cross-assignment of error, the Board asserts that the common pleas court lacked subject matter jurisdiction to review its decision because Ferreri did not file a grievance and pursue arbitration as is expressed in the controlling collective bargaining agreement. This argument lacks merit.
 {¶ 12} Civ. R. 12(B)(1) allows a common pleas court to dismiss a claim when it lacks subject matter jurisdiction. Patel v. Vance, Belmont App. No. 07 BE 16, 2007-Ohio-6223. "The standard to apply for a dismissal pursuant to Civ. R. 12(B)(1) is whether the plaintiff has alleged any cause of action which the court has authority to decide." Id. at ¶ 7. As a question of law, an appellate court will review the issue independently of the lower court's decision. Id.
 {¶ 13} In order to determine if the common pleas court had subject matter jurisdiction over the appeal, we must consider whether Ferreri properly brought his appeal before the lower court or if he failed to exhaust his administrative remedies.
 {¶ 14} R.C. 4117.10 governs collective bargaining agreements and their relationship to state and local laws. State ex rel. Ohio Assn. of Pub.School Emp./AFSCME, Local 4, AFL-CIO v. Batavia Local School Dist. Bd.of Edn., 89 Ohio St.3d 191, 2000-Ohio-130. According *Page 5 
to R.C. 4117.10 (A), "An agreement between a public employer and an exclusive representative entered into pursuant to this chapter governs the wages, hours, and terms and conditions of public employment covered by the agreement. If the agreement provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure and the state personnel board of review or civil service commissioners have no jurisdiction to receive and determine any appeals relating to matters that were the subject of a final and binding grievance procedure. Where no agreement exists or where an agreement makes no specification about amatter, the public employer and public employees are subject to allapplicable state or local laws or ordinances pertaining to the wages,hours, and terms and conditions of employment for publicemployees." (Emphasis added.)
 {¶ 15} Therefore, when a collective bargaining agreement does not address a specific issue, relevant statutory law will apply. Hall v.Clearcreek Twp. (April 6, 1992), Warren App. No. CA91-10-073; see alsoReeves v. Union Twp. Bd. of Trustees (1989), 55 Ohio App.3d 148 (finding post-suspension appeal provided by statute was available because collective bargaining agreement did not specifically address the process); and State ex rel. Clark v. Greater Cleveland Regional TransitAuth. (1990), 48 Ohio St.3d 19 (holding that employees were entitled to claim credit for prior public employment as authorized by statute where the collective bargaining agreement did not expressly discuss such rights).
 {¶ 16} Central to our analysis is whether the collective bargaining agreement between the Board and its employees specifically addressed a post-termination appeals process. According to Article 5 of the agreement, a dissatisfied employee may file a complaint using a four-step grievance process. Should an employee reach the fourth step, an arbitrator becomes involved and hears the complaint. As defined by Article 5, a grievance is "an alleged violation, misinterpretation or misapplication of the written provisions of this *Page 6 
agreement" and a grievant is defined as a "bargaining unit member, a group of bargaining unit members or the Association acting on behalf of itself or any group of bargaining unit members."
 {¶ 17} Article 7 then discusses suspension and/or termination. "7.01: The contract of an employee may be suspended and/or terminated for the reasons and in the manner set forth in 3319.081 of the Ohio Revised Code. (See Exhibit A). 7.02: The limited contracts of employees may be non-renewed as provided in 3319.083 of the Ohio Revised Code * * *." The agreement, however, does not specifically state that the termination or suspension process is to be handled as if it were a grievance or under the four-step process which ultimately ends in arbitration. Instead, the exact language of the agreement sets forth the directive that termination is governed by R.C. 3319.081 specific to the reasons for and manner of termination contained therein.
 {¶ 18} When the common pleas court addressed the Board's motion to dismiss, it concluded that Ferreri was "appealing the Board of Education's decision to terminate his employment pursuant to R.C. § 3319.081; he is not arguing that the Board of Education violated, misinterpreted or misapplied Section 7.01 of the Agreement. Therefore, [Fererri] has not brought to this court a `grievance' as it is defined by Article 5 of the Agreement." We find no error in this conclusion.
 {¶ 19} Attached as Exhibit A of the agreement, R.C. 3319.081 governs contracts for nonteaching employees. Subsection (C) states in pertinent part, "The contracts as provided for in this section may be terminated by a majority vote of the board of education * * * only for violation of written rules and regulations as set forth by the board of education or for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, or any other acts of misfeasance, malfeasance, or nonfeasance. * * * Within ten days following the receipt of such notice by *Page 7 the employee, the employee may file an appeal, in writing, with thecourt of common pleas of the county in which such school board issituated. After hearing the appeal the common pleas court may affirm, disaffirm, or modify the action of the school board." (Emphasis added.)
 {¶ 20} According to the precepts set forth in R.C. 3319.081, the Board sent Ferreri notice that it was holding a special meeting on December 12, 2005 to hear the termination issue. Mimicking the language of the statute, Borchers listed seven reasons why he was prepared to recommend termination and then stated that those reasons constituted "a violation of the Board's written rules and regulations, inefficiency, dishonesty, immoral conduct, insubordination, neglect of duty, misfeasance, malfeasance, and/or nonfeasance." After the Board held the hearing and weighed the evidence before it, Ferreri's contract was terminated.
 {¶ 21} In compliance with R.C. 3319.081, Ferreri filed an appeal with the Clermont County Court of Common Pleas within ten days of his termination and the lower court heard his appeal. After a two-day hearing and reviewing the record from the Board meeting, as well as all evidence presented to it, the lower court affirmed the Board's decision.
 {¶ 22} Because the collective bargaining agreement did not speak specifically to termination as being subject to the grievance process, R.C. 3319.081 was controlling. Ferreri's choice to appeal to the court of common pleas and the court's decision to affirm the Board's decision were actions sanctioned by R.C. 3319.081 so that the lower court had the requisite subject matter jurisdiction to hear the case. Therefore, the Board's cross-assignment of error is overruled.
 {¶ 23} Assignment of Error No. 1
 {¶ 24} "THE COURT BELOW ERRED IN FINDING THAT THE TERMINATION OF APPELLANT/CROSS-APPELLEE JERRY FERRERI'S EMPLOYMENT WAS SUPPORTED *Page 8 
BY THE PREPONDERANCE OF SUBSTANTIAL, RELIABLE AND PROBATIVE EVIDENCE."
 {¶ 25} In his sole assignment of error, Ferreri argues that the lower court erred when it affirmed the Board's decision to terminate his contract because the decision was not supported by the evidence. This argument lacks merit.
 {¶ 26} As discussed, R.C. 3319.081 governs contracts for nonteaching employees and permits termination by "* * * a majority vote of the board of education * * * only for violation of written rules and regulations as set forth by the board of education or for incompetency, inefficiency, dishonest, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, or any other acts of misfeasance, malfeasance, or nonfeasance." Once a board issues a decision, that decision may be appealed according to the applicable statutes. Dudukovich v. Lorain Met. Housing Auth. (1979)58 Ohio St.2d 202.
 {¶ 27} R.C. 2506.01 governs appeals from decisions of any agency of any political subdivision such as the one made by the Board. Subsection (A) states that, "every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located * * *."
 {¶ 28} R.C. 2506.04 authorizes a court of common pleas to review an administrative decision, "* * * the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause * * *."
 {¶ 29} In Dudukovich, the Ohio Supreme Court set out the process a court of common *Page 9 
pleas must follow when reviewing an administrative decision.58 Ohio St.2d 202. "The Court of Common Pleas must weigh the evidence in the record * * * to determine whether there exists a preponderance of reliable, probative and substantial evidence to support the agency decision. * * * The key term is `preponderance.' If a preponderance of reliable, probative and substantial evidence exists, the Court of Common Pleas must affirm the agency decision * * *." Id. at 207.
 {¶ 30} As this court has previously held, reliable evidence is that which is "dependable, with reasonable assurance of its probability, as not only truthful but also true. `Probative' relates to the evidentiary value of the testimony and other evidence in an analytical sense, having depth and being more than merely superficial or speculative. `Substantial' would appear to mean that the evidence has body or substance of sufficient degree to be of some weight, as well as quality, that gives it standing and credence, as well as dependable and testworthy." Powell v. Jefferson Local School Dist. Bd. of Edn. (August 31, 1983), Madison App. No. 772, at 16-17.
 {¶ 31} An appellate court is limited to determining whether the lower court abused its discretion in finding that the administrative decision was, or was not, supported by the requisite evidence. Bivins v. OhioState Bd. of Emergency Med. Servs., Erie App. No. E-05-010,2005-Ohio-5999. "An abuse of discretion `implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.'" State ex rel. Commercial Lovelace Motor Freight,Inc. v. Lancaster (1986) 22 Ohio St.3d 191, 193, citing State ex rel.Shafer v. Ohio Turnpike Comm. (1953), 159 Ohio St. 581, 590.
 {¶ 32} The fact that this court might have "arrived at a different conclusion than did the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so."Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd. (1988),40 Ohio St.3d 257, *Page 10 
261.
 {¶ 33} After thoroughly reviewing the record, the lower court did not abuse its discretion when it found that the Board based its decision to terminate Ferreri on a preponderance of reliable, probative and substantial evidence.
 {¶ 34} According to the notice of termination letter sent by Borchers to Ferreri, seven charges were levied against Ferreri and the Board heard evidence on these bases: failure to follow the directive not to discuss the instance between Ferreri and Penders, falsification of time sheets, improper use of a board-owned vehicle, neglect of duty as evidenced by evaluations, failure to adhere to rules regarding turning in time sheets, failure to provide copies of tape recordings taken at previous disciplinary hearings, and other good and just cause.
 {¶ 35} At the Board meeting, as well as during the two-day review hearing, evidence was presented which spoke to Ferreri's conduct during his employment. Specifically, Ferreri disobeyed a direct order from his superiors not to discuss the incident between himself and Penders during which Penders yelled profanities at Ferreri. The Board was shown a written statement by Denise Thompson[3] which indicated that Ferreri approached her and discussed a possible harassment suit against Penders stemming from the before mentioned incident. Though Ferreri claimed that he never discussed the incident after Borchers told him not to, the Board and lower court found that Ferreri contravened the directive and discussed the incident with fellow employees.
 {¶ 36} Regarding falsification of time sheets, Ferreri indicated on his time sheets that *Page 11 
he worked a full shift when sign-out sheets indicated that he was signing his children out of school when he was supposed to be working. Though Ferreri claimed he was using comp-time, the lower court heard evidence that the maintenance department was never authorized to earn or use comp-time and that Penders never had a special arrangement worked out with Ferreri which would allow him to alter his schedule to allow him to sign out and visit with his children during normal work hours. After hearing the accusation, evidence, and Ferreri's explanation, the Board and the lower court found that that evidence demonstrated that Fererri had falsified his time sheets.
 {¶ 37} The Board, and the lower court, also heard evidence from Ferreri's colleague who testified that he saw Ferreri's children in a board-owned vehicle. Though Ferreri claimed he allowed the children to enter the van to get an after-school treat, the Board and lower court found that Ferreri had improperly used a board-owned vehicle.
 {¶ 38} The common pleas court then concluded "based upon the foregoing, the Court finds that the order of the Board of Education of Milford Exempted School District terminating [Ferreri] was not unconstitutional, was not illegal, was not arbitrary, capricious, or unreasonable. Further, the Court finds that it is supported by the preponderance of substantial, reliable and probative evidence in the record and the Court therefore affirms the decision of the Milford Board of Education."
 {¶ 39} Based on our review of the evidence in the record, we cannot say that the lower court abused its discretion in affirming the Board's termination order. The record contains reliable, probative, and substantial evidence from which the common pleas court could find that Ferreri's acts violated written rules, and constituted insubordination, misfeasance, malfeasance, or nonfeasance. R.C. 3319.081 authorizes termination on these grounds and the lower court did not abuse its discretion when it affirmed the Board's decision. Therefore, Ferreri's second assignment of error is overruled. *Page 12 
 {¶ 40} Judgment affirmed.
WALSH, P.J., and BRESSLER, J., concur.
[1] Strong, as defined by the evaluation, describes an employee who "usually surpasses standards of Milford Exempted Village Schools."
[2] Average, as defined on the evaluation, describes an employee that "generally meets standards of Milford Exempted Village Schools."
[3] Ferreri claims that the Board and the lower court should not have considered the written statement because it was hearsay. However, the Ohio Supreme Court has held that Ohio's evidence rules do not apply to administrative agencies. Orange City School Dist. Bd. of Edn. v.Cuyahoga Cty. Bd. of Revision, 74 Ohio St.3d 415, 1996-Ohio-282. At the hearing, the lower court admitted the written statement over objection because it was not offered to prove the truth of the matter asserted. Instead, the statement was offered to show the effect on the Board during its decision making process. *Page 1